IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ANTHONY JEFFREY CHRISTENSEN,<br><br>    Plaintiff,<br><br>v.<br><br>ROBERT BRAITHWAITE et al.,<br><br>    Defendants. | **MEMORANDUM DECISION &<br>ORDER DISMISSING SOME<br>DEFENDANTS & CLAIMS &<br>REQUIRING SERVICE OF PROCESS<br>ON REMAINING DEFENDANTS**<br><br>Case No. 2:17-CV-1123 CW<br><br>District Judge Clark Waddoups |

Plaintiff, currently a Utah State Prison (USP) inmate, filed this *pro se* civil-rights suit, *see* 42 U.S.C.S. § 1983 (2021),[1] when he was a pre-trial detainee at Sanpete County Jail (SCJ). (ECF Nos. 4, 80.) The Court granted his motion to proceed *in forma pauperis*. (ECF No. 3.) Plaintiff seeks declaratory and injunctive relief, and money damages. (ECF No. 75, at 25-27.)

Having now screened the Fourth Amended Complaint (FAC), (ECF No. 75), under its statutory review function,[2] the Court concludes that some defendants must be dismissed and

---

[1]The federal civil-rights statute reads, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C.S. § 1983 (2021).

[2]The screening statute reads:

> (a) Screening.—The court shall review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) Grounds for dismissal.—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
>> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C.S. § 1915A (2021).

official service of process is warranted for remaining defendants. *See* 28 U.S.C.S. § 1915(d) (2021) ("The officers of the court shall issue and serve all process, and perform all duties in such cases."). To screen the FAC, the Court thoroughly reviewed and liberally construed 504 pages, between the FAC and its exhibits, (ECF No. 75), in an effort to tease out any possible claims with affirmatively linked defendants.

## I. BACKGROUND

For alleged violations of his federal constitutional rights while held as a pre-trial detainee in SCJ, Plaintiff seeks redress against thirteen Sanpete County (SC) defendants, in their official and individual capacities: Sergeant Ross **Bailey**, Secretary Amanda **Bennett**, Lieutenant Brad **Bown**, Captain Robert **Braithwaite**, Deputy Brandon **Brown**, Deputy Dale **Christensen**, Sergeant **Gates**, Deputy Chad **Imlay**, "IDHO Officer" **Neill**, Sergeant Jeff **Nielsen**, Sergeant Gretchen **Nunley**, Deputy Keith **Nunley**, and Deputy Kathy **Robbins**.

## II. SUA SPONTE DISMISSAL FOR FAILURE TO STATE CLAIM

## A. STANDARD OF REVIEW

Evaluating a complaint for failure to state a claim upon which relief may be granted, this Court takes all well-pleaded factual assertions as true and regards them in a light most advantageous to the plaintiff. *Ridge at Red Hawk L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Dismissal is appropriate when, viewing those facts as true, the plaintiff has not posed a "plausible" right to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)*; Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 556).  When a civil-rights complaint contains "bare assertions," involving "nothing more than a 'formulaic recitation

of the elements' of a constitutional . . . claim," the Court considers those assertions "conclusory and not entitled to" an assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (quoting *Twombly*, 550 U.S. at 554-55). In other words, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Red Hawk*, 493 F.3d at 1177 (italics in original).

This Court must construe pro se "'pleadings liberally,' applying a less stringent standard than is applicable to pleadings filed by lawyers. Th[e] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citations omitted). This means that if this Court can reasonably read the pleadings "to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Still, it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (citing *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) (per curiam)).

## B. GENERAL RULES REGARDING PRETRIAL DETAINEES

Conditions-of-confinement claims raised by pretrial detainees are assessed under the Fourteenth Amendment's Due Process Clause. *Sanders v. Hopkins*, 131 F.3d 152 (10th Cir. 1997) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). The Due Process Clause proscribes a pretrial detainee from exposure to conditions that "amount to punishment or otherwise violate the Constitution." *Bell*, 441 U.S. at 537. "If a particular condition or restriction of pretrial detention

is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment.'" *Id*. at 539. Without evidence that prison personnel meant to punish, a decision on whether the restriction is punitive or incidental to legitimate governmental purpose is based on '"whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].'" *Stevenson v. Smith*, 980 F.2d 741 (10th Cir. 1992) (citing *Bell*, 441 U.S. at 538). Ensuring facility security and effectually administering a detention facility are valid goals that may support certain restrictions. *Bell*, 441 U.S. at 540.

## C. CLAIMS FOR INJUNCTIVE RELIEF

Plaintiff requests injunctive relief from SCJ defendants. (ECF No. 75, at 3, 25.) However, on March 11, 2020, Plaintiff sent an address change, showing he has "been sent from County Jail to State prison." (ECF No. 78.) His latest address on the docket is Utah State Prison.

> "Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *McClendon v. City of Albuquerque*, 100 F.3d 863, 867 (10th Cir. 1996). "This requirement exists at all stages of federal judicial proceedings, and it is therefore not enough that the dispute was alive when the suit was filed; the parties must continue to have a personal stake in the outcome." *Id.*
> "Where a plaintiff seeks an injunction, his susceptibility to *continuing* injury is of particular importance--past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." *Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011) (brackets, ellipses and internal quotation marks omitted). "Moreover, a plaintiff's continued susceptibility to injury must be reasonably certain; a court will not entertain a claim for injunctive relief where the allegations take it into the area of speculation and conjecture." *Id.* (internal quotation marks omitted). In other words, "[a] claim for equitable relief is moot absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *Id.* (internal quotation marks omitted).

*Burnett v. Fallin*, 785 F. App'x 546, 551-52 (10th Cir. 2019) (unpublished).

Based on Plaintiff's admitted transfer away from SCJ, Plaintiff's requests for injunctive relief from SCJ defendants are moot. *See McAlpine v. Thompson*, 187 F.3d 1213, 1215 (10th Cir. 1999). All requests for injunctive relief are therefore dismissed.

## D. RLUIPA CLAIM

Plaintiff brings a claim under Religious Land Use and Institutionalized Persons Act (RLUIPA). 42 U.S.C.S. § 2000cc-2000cc-5 (2021).

Plaintiff asserts that his RLUIPA rights were violated when Defendants (presumably in their official capacities, operating as Sanpete County) denied him religious access. (Doc. No. 75, at 6.) However,

> RLUIPA is limited to official capacity claims for equitable relief. *See Sossamon v. Texas,* 563 U.S. 277, 278-79 (2011) (holding Eleventh Amendment immunity bars RLUIPA claims for money damages); *Stewart v. Beach*, 701 F.3d 1322, 1335 (10th Cir. 2012) (noting RLUIPA does not permit individual capacity claims). Consequently, RLUIPA claims regarding prison conditions become moot if the inmate plaintiff is released from custody. *See Alvarez v. Hill*, 667 F.3d 1061, 1063-65 (9th Cir. 2012).

*Pfeil v. Lampert*, 603 F. App'x 665, 668 (10th Cir. 2015). Once Plaintiff was released from Sanpete County custody, any RLUIPA claims became moot.

## E. CLAIM OF LACK OF MEANINGFUL GRIEVANCE REVIEW

Plaintiff possibly alleges that his grievances were not properly reviewed. (ECF No. 75, at 5.) However, "there is no independent constitutional right to state administrative grievance procedures. Nor does the state's voluntary provision of administrative grievance process create a liberty interest in that process." *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011) (unpublished). This claim is thus dismissed.

## F. POSSIBLE MENTAL OR EMOTIONAL HARM

Plaintiff possibly requests damages for mental and emotional injury. Such damages are prohibited by 42 U.S.C.S. § 1997e(e) (2021), which reads, "No Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of a physical injury or the commission of a sexual act." No physical injury is alleged by Plaintiff. Thus, any request for damages for mental or emotional injury is denied.

## G. AFFIRMATIVE LINK

Plaintiff has filed five iterations of his complaint. And twice, the Court explicitly explained his responsibility to assert affirmative links between particular defendants and particular causes of action. (ECF Nos. 68, 72.)[3]

Indeed, the complaint must clearly state what each individual defendant did to violate Plaintiff's civil rights. *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (stating each defendant's personal participation is essential allegation). "To state a claim, a complaint must 'make clear exactly *who* is alleged to have done *what* to *whom*.'" *Stone v. Albert*, 338 F. App'x 757, 759 (10th Cir. 2009) (unpublished) (emphasis in original) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008)). Plaintiff may not name an individual as a defendant based solely on supervisory status. *See Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996) (stating supervisory status alone is insufficient to support liability under § 1983). Nor does "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff . . . establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).

---

[3]Before Plaintiff filed FAC, the Court warned that it would be screened "for dismissal or service." (ECF No. 72, at 7.) This is because of the five chances Plaintiff has had to state a claim upon which relief may be granted, with two Court orders providing the standards and expectations for an amended complaint, with specific guidance for Plaintiff's situation. Under these circumstances, further opportunity for amendment would be futile

### 1. Defendants

Considering these guidelines, the Court concludes Plaintiff has done nothing to affirmatively link his claims to these defendants: **Bailey**, **Brown**, **K. Nunley**, and **Robbins**. He has not tied any material facts to them. Claims against these defendants may not survive this omission; they are thus dismissed.

### 2. Claims

Further considering these guidelines, the Court concludes Plaintiff has done nothing to affirmatively link any defendants to these assertions or claims:

> [D]eprivation of phone to my daughter, and family . . .[,] eat meals in my cell not with others, deprived T.V., and visits, no contact with inmates, . . . made me unavailable to purchase and enjoy canteen, and hot food cart, no coffee, . . . unable to purchase hobby materials or send nice stuff to my daughter or family, i.e., drawings/crochet stuff.

(*Id.* at 24.)

He has not tied any material facts regarding these claims to a defendant. These claims may not survive his omission; they are thus dismissed.

Further, there are some allegations that Plaintiff appears to believe support causes of action but do not. Namely, Plaintiff alleges Defendants did not follow SCJ policy and Utah Administrative Code, (e.g., ECF No. 75-19, at 4). However, local policy and state-administrative-code violations do not constitute federal constitutional violations.

### H. LEGAL ACCESS CLAIMS

Plaintiff asserts he lacked access to a law library, legally trained people, writing equipment, and mailing items to allow him to defend his criminal case and challenge his conditions of confinement, as well as to manage divorce litigation. (ECF No. 75, at 7.)

## 1. Relevant Facts

Relevant facts from FAC and exhibits and Court records, taken as true for this Order's purposes:

• Plaintiff "defaulted [his] divorce." (ECF No. 75, at 7.)

• SCJ provides no law library, (ECF No. 75-4, at 3), or "adequate people trained in law to help with criminal case, habeas, or 1983." (ECF No. 75, at 7.) [No defendant linked.[4]]

• SJC's policies for "access to courts and counsel": "A. providing legal communications (mail, visits, and telephone); B. providing postage or delivery, paper, pencils, and other legally required supplies and services to prepare legal papers; C. ensuring there are no obstacles which prevent inmates from preparing and filing meaningful legal papers." (*Id*. at 75-16, at 3.)

• USP contract attorneys do not help county inmates. (ECF No. 75-4, at 5.) [No defendant linked.]

• Plaintiff had public defender representing him in criminal case. (ECF No. 75-17, at 4.) Plaintiff without phone access to attorney for fifty-eight days. (ECF No. 75, at 7.) [No defendant linked.]

• Plaintiff filed state petition for extraordinary relief, and two federal civil-rights cases that were dismissed. (ECF No. 75, at 7.) On appeal, Plaintiff did not have access to appellate rules, which caused him to disregard some technical rules not leading to dismissal. (*Id*.) [No defendant linked.]

• Plaintiff was charged for legal-work photocopies. (ECF No. 75, at 18.)[5] [No defendant linked.]

---

[4]Failure to link a defendant to an allegation is fatal to any attempt to state a claim upon which relief may be granted. All ensuing notations of "No defendant linked," mean that allegation will not be addressed further. Though such allegations are not really "relevant facts," they are included to assure Plaintiff that each allegation was heeded.
[5]This allegation is not addressed further because "'an inmate's right of access to the courts does not require that prison officials provide inmates free or unlimited access to photocopying machinery.'" *Brooks v. Colo. Dep't of Corr.*, 730 F. App'x 628, 632 (10th Cir. 2018) (quoting *Johnson v. Parke*, 642 F.2d 377, 379-80 (10th Cir. 1981) (per curiam)); *see also Holt v. Werholtz*, 185 F. App'x 737, 740 (10th Cir. 2006) (concluding handwriting copies of court documents is reasonable alternative to photocopying court documents when court does not require typed documents).

• Plaintiff received for free, based on indigency, limited preparation materials for legal work (e.g., paper, writing instruments, and postage); once he used those, he was charged for more materials.[6] (ECF No. 75, at 20.) [No defendant linked.]

• All Plaintiff's legal mail was opened and "re-taped." (ECF No. 75-19, at 5.) [No defendant linked.]

• On April 1, 2017, Plaintiff arrived at SCJ. (ECF No. 75-34, at 13.)

• From April 1 to August 30, 2017, when Plaintiff requested copies of his legal work, Defendants Brown, Christensen, Imlay, and Nunley made copies of Plaintiff's legal work outside his presence. (ECF No. 75, at 21.)[7]

• On June 5, 2017, responding to Plaintiff's request for access to law library or "contract attorneys," Defendant Bown indicated Plaintiff should contact appointed attorney in his criminal case. (ECF No. 75-4, at 2, 4.) [Does not establish elements of cause of action. For instance, nothing about specific habeas or conditions-of-confinement case being stymied.]

• On July 25, 2017, Plaintiff's request for specific case law, without stating purpose, was denied. (*Id*. at 6.) [No defendant linked.]

---

[6]When the Tenth Circuit was confronted with a similar issue--a plaintiff contending he was denied access to the courts because he was not given enough free materials--the court denied the claim because the plaintiff "did not allege any actual injury to his ability to pursue a nonfrivolous legal claim." *Doyle v. Ritter*, 334 F. App'x 164, 165 (10th Cir. 2009) (citing *Lewis*, 518 U.S. at 349-55). Plaintiff's claim about free legal materials is likewise denied and not addressed further here.

[7]The Fourth Amendment right to privacy turns on whether the individual asserting protection of the right has a legitimate, reasonable privacy expectation. *U.S. v. Johnson*, 584 F.3d 995, 999 (10th Cir. 2009). Generally, inmates have a limited reasonable expectation of privacy due to society's recognition that privacy loss is an "inherent incident[] of confinement." *Hudson v. Palmer*, 468 U.S. 517, 527-28 (1984) (quoting *Bell*, 441 U.S. at 537). Courts have concluded there is no privacy expectation when a prisoner voluntarily hands over legal papers to a jail personnel for copying--even when jail policy forbids personnel from reading the document being copied. *See Frazier v. Zavaras*, No. 10-CV-2534-CMA-KMT, 2011 U.S. Dist. LEXIS 112951, at *21-23 (D. Colo. Sept. 30, 2011). Moreover, if the document was intended to be filed with a court, Plaintiff had no reasonable expectation of privacy in it because the privacy right does not protect public information, as are most documents filed with a court. *Nilson v. Layton City*, 45 F.3d 369, 372 (10th Cir. 1995). Thus, this allegation is not addressed further.

• On June 26, 2017, Defendant Bown wrote grievance response, "If you have a need of an extra envelope for legal paper communications, provide proof to the officers that your paper work is of a legal matter and we will provide you with an extra envelope when necessary." (ECF No. 75-16.)[8]

• On August 10, 2017, Plaintiff wrote American Civil Liberties Union; his mail "was opened and read, not in [his] presence." (ECF No. 75, at 19.) [No defendant linked.]

• On August 17, 2017, Defendant D. Christensen stated Plaintiff's "legal mail would be opened and read." (ECF No. 75-34, at 13.) [As prospective comment, Defendant did not say who would open and read mail. Does not establish elements of cause of action.]

• On September 1, 2017, while in SCJ, Plaintiff filed different § 1983 case in this Court. *Christensen v. Taylor*, No. 2:17-CV-992-RJS, ECF No. 1 (D. Utah Sept. 1, 2017). On September 21, 2018, based on failure to state claim upon which relief may be granted, this Court reviewed merits of Plaintiff's Amended Complaint, granting Defendants' motions to dismiss--without prejudice. *Id*. at ECF No. 53.

• On September 25, 2017, Defendant Bown wrote, "[Y]our account shall be charged for the excess paper you require [for legal needs]. You may be indigent, but there will be a debt on your account charging for the excess paper you receive, and may be collected at a later date if funds become available." (ECF No. 75-20, at 6.) [Does not establish elements of cause of action. For instance, nothing about specific habeas or conditions-of-confinement case being stymied.]

• On October 11, 2017, while in SCJ, Plaintiff filed this § 1983 case. (ECF No. 4.) After nearly eighteen months of litigation on Amended Complaint, this Court ordered, (ECF No. 68), Plaintiff

---

[8]Grievance denial alone with no connection to "violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).

to cure his deficient amended complaint with Second Amended Complaint, including this

guidance:

> As Plaintiff fashions his second amended complaint, he should
> also keep in mind that it is well-recognized that prison inmates
> "have a constitutional right to 'adequate, effective, and meaningful'
> access to the courts and that the states have 'affirmative
> obligations' to assure all inmates such access." *Ramos v. Lamm*,
> 639 F.2d 559, 583 (10th Cir. 1980). In *Bounds v. Smith*, 430 U.S.
> 817 (1977), the Supreme Court expounded on the obligation to
> provide access to the Courts by stating "the fundamental
> constitutional right of access to the courts requires prison
> authorities to assist inmates in the preparation and filing of
> meaningful legal papers by providing prisoners with adequate law
> libraries or adequate assistance from persons trained in the law."
> *Id.* at 828 (footnote omitted & emphasis added).
> However, to successfully assert a claim for denial of legal
> access a plaintiff must allege not only inadequacy of the library or
> legal help but also "that the denial of legal resources hindered
> [Plaintiff's] efforts to pursue a nonfrivolous claim." *Penrod v.
> Zavaras*, 84 F.3d 1399, 1403 (10th Cir. 1996) (emphasis added);
> *Carper v. Deland*, 54 F.3d 613, 616 (10th Cir. 1995). In other
> words, Plaintiff must show "that any denial or delay of access to
> the court prejudiced him in pursuing litigation." *Treff v. Galetka*,
> 74 F.3d 191, 194 (10th Cir. 1996). Moreover, the non-frivolous
> litigation involved must be "habeas corpus or civil rights actions
> regarding current confinement." *Carper*, 54 F.3d at 616; *accord
> Lewis v. Casey*, 518 U.S. 343, 353-55 (1996).

(*Id*. at 4-5.)

• On January 10, 2018, Defendant Nielsen wrote,

> [Y]ou are receiving two stamped envelopes, two pieces of paper
> and a pencil as indigent supplies for free at the County's . . .
> expense . . . . You also receive extra stamped envelopes,
> photocopies, paper and pencils for free at the County's expense
> because you are acting as your own legal authority.

(ECF No. 75-22, at 2.) [Does not establish elements of cause of action. For instance, nothing

about specific habeas or conditions-of-confinement case being stymied.]

• On February 15, 2018, while in SCJ, Plaintiff filed another different § 1983 case in this Court. *Christensen v. Burnham*, No. 2:18-CV-143-DB, ECF No. 5 (D. Utah Feb. 15, 2018). On March 18, 2019, Court reviewed Complaint's merits, granting Defendants' motions to for summary judgment and dismissing other defendants for failure to state claim upon which relief may be granted. *Christensen*, No. 2:17-CV-992-RJS, at ECF No. 89.

• On April 12, 2019, this case Plaintiff filed second amended complaint. (ECF No. 70.) This Court ordered Plaintiff to cure deficient second amended complaint with Third Amended Complaint, (ECF No. 72), including this additional guidance:

> As Plaintiff fashions his third amended complaint, he should also keep in mind that it is well-recognized that the Tenth Circuit has "held that availability of law libraries is only one of many constitutionally acceptable methods of assuring meaningful access to courts, and pretrial detainees are not entitled to law library usage if other available means of access to court exist." *United States v. Cooper*, 375 F.3d 1041, 1051 (10th Cir. 2009). And "provision of legal counsel is a constitutionally acceptable alternative to a prisoner's demand to access a law library. *Id*. at 1051-52. Plaintiff suggests in his Second Amended Complaint that he waived his right to counsel in his criminal case. When a pretrial detainee, like Plaintiff, does that "he is not entitled to access to a law library or other legal materials." *Id*. at 1052.

(ECF No. 72, at 5.)

• On July 2, 2019, Plaintiff filed Third Amended Complaint here, (ECF No. 73), but quickly supplanted that with FAC on August 13, 2019, (ECF No. 75).

## 2. Legal Standards

The basic legal standards were set forth by the Court in earlier orders here, as quoted above. To emphasize the fatally missing element in Plaintiff's attempt to state his claim here, a prisoner's argument that he lacked legal access must demonstrate actual injury--not mere deprivation--as a "constitutional prerequisite" to bringing a claim. *Lewis*, 518 U.S. at 351;

*Brooks v. Colo. Dept' of Corr.*, 762 F. App'x 551, 558 (10th Cir. 2019) ("[T]o state a claim for denial of the constitutional right of access to the courts he was required to allege more than that the prison library or legal access policies are 'subpar in some theoretical sense.'" (quoting *Lewis*, 518 U.S. at 351)). Plaintiff has not asserted actual injury here--e.g., that he missed critical court deadlines; could not timely file legal documents; was denied constitutionally mandated legal help that kept him from defending himself in his criminal case or filing an initial pleading in a habeas petition or conditions-of-confinement case[9]; or--most crucial here--*lost a case which could have been won*. *See Peoples v. Corr. Corp. of Am*., No. 02-3298-CM, 2004 U.S. Dist. LEXIS 20248, at *17 (D. Kan. Mar. 26, 2004). As in *Peoples*, Plaintiff clearly "appears to have been afforded the necessary resources to file the complaint in this action and has submitted [voluminous] additional pleadings that contain case law citations and analysis of relevant case law."[10] *Id*. at *17-18. Further, the Court itself in this case twice gave Plaintiff specific guidance, citing caselaw, on how to state a claim for this very cause of action. (ECF Nos. 68, 72.) Not only that,

---

[9]So, Plaintiff's divorce case may not be the subject of an inmate legal-access claim: his divorce case was not related to his confinement (criminal, habeas, or conditions-of-confinement civil rights). In *Lewis*, the Supreme Court clearly held that "the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 at 354. Instead, an injury happens only when prisoners are kept from challenging "their sentences, directly or collaterally" or challenging "the conditions of their confinement." *Id*. 355. "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id*. (emphasis in original); *see also Carper v. DeLand*, 54 F.3d 613, 617 (10th Cir. 1995) ("[A]n inmate's right of access does not require the state to supply legal assistance beyond the preparation of initial pleadings in a civil rights action regarding current confinement or a petition for a writ of habeas corpus.") (citations omitted).

[10]His claim that a dearth of paper, envelopes, writing instruments, and postage breached his right to legal access is not plausible, especially as he was able to file this federal action, in addition to two other cases in this Court. *See Hardesty v. Saline County Jail*, No. 19-3211-SAC, 2020 U.S. Dist. LEXIS 56906, at *7 (D. Kan. Apr. 1, 2020).

Indeed, Plaintiff's three civil-rights cases--all filed from SJC--and attacking his conditions of confinement there belie his allegations from stem to stern. For instance, in this case alone, Plaintiff has filed about 1322 pieces of paper, including five iterations of his complaint, exhibits, affidavits, and motions--with plentiful citations to relevant statute and caselaw and copies of jail records. Out of 81 items on the docket, about 54 were generated by Plaintiff, presumably sent in an envelope with postage. All but 7 out of 1322 pieces of paper and all but 3 of Plaintiff's 54 docket entries were sent from SJC.

Meanwhile in his first case in this Court, he filed 668 pieces of paper, and, out of 76 docket entries, 50 were filed by him. *Christensen*, 2:17-CV-992-RJS. And in his case filed after the current one, he filed 192 pieces of paper, and, out of 96 docket entries, 58 were filed by him. The latter case he took through summary judgment, (ECF No. 89), and appeal, (ECF No. 96).

but the Court sent Plaintiff a form complaint with information on how to complete it. (ECF Nos. 68, 72.)

Accordingly, the Court concludes that Plaintiff has not alleged an actual injury caused by the ostensible denial of legal resources at SCJ; thus, his claim that defendants breached his due-process right of access to the courts fails to state a claim upon which relief may be granted and is dismissed. *See Peoples*, 2004 U.S. Dist. LEXIS 20284, at *6.

### 3. Summary

Within the Relevant Facts section, the Court indicated next to each applicable fact, an explanatory footnote for why it did not state a cause of action, or a note that it had not been affirmatively linked to a named defendant or did not meet the elements of a legal-access cause of action. Plaintiff's legal-access claims are thus dismissed.

## III. CLAIMS WARRANTING SERVICE OF PROCESS

### A. FIRST-AMENDMENT-FREE-EXERCISE CLAIM

Plaintiff asserts that his free-exercise-of-religion rights were violated. (ECF No. 75, at 6.)

### 1. Relevant Facts

Relevant facts from FAC and Court records, taken as true for this Order's purposes: Around April 30, 2017, Defendants Braithwaite, Bown, Christensen, Imlay, Nielsen, and Sgt. Nunley kept Plaintiff from attending church services for "safety" and "security reasons." (ECF Nos. 75, at 10; 75-34, at 13.)

### 2. Legal Standards

The Free Exercise Clause states, "Congress shall make no law . . . prohibiting the free exercise [of religion]." U.S. Const. amend I. It safeguards against governmental regulation of religious belief or activity and applies to the states through the Due Process Clause of the

Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). A jail employee's application of governmental authority may violate an inmate's free-exercise rights. *Shrum v. City of Coweta*, 449 F.3d 1132, 1140 (10th Cir. 2006).

"Even though they are incarcerated, prisoners retain fundamental constitutional rights. These rights include the reasonable opportunity to pursue one's religion as guaranteed by the free exercise clause of the First Amendment." *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1209 (10th Cir. 1999) (citing *Turner v. Safley*, 482 U.S. 78, 84 (1987); *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987); *Mosier v. Maynard*, 937 F.2d 1521, 1525 (10th Cir. 1991)). Of course, due to inherent hazards and concerns of operating a jail, "what constitutes a reasonable opportunity must be evaluated with reference to legitimate penological objectives of the prison." *Mosier*, 937 F.2d at 1525. Hence, the benchmark for assessing a prison employee's action touching a prisoner's basic constitutional right, like free exercise of religion, is this: "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89. This reasonableness inquiry considers several factors: (1) whether a rational connection is identified between the jail-employee action and a legitimate governmental interest promoted as its rationale; (2) whether alternative ways to exercise the right are present despite the jail-employee action; (3) what impact accommodating exercise of the religious right would have on jail employees and resources, and other inmates, generally; and (4) whether there are available, easy-to-execute alternatives to accommodate the inmate's rights. *See id.* at 89-91; *Mosier*, 937 F.2d at 1525.

### 3. Conclusion

The Court takes as true Plaintiff's allegations that Defendants **Braithwaite**, **Bown**, **Christensen**, **Imlay**, **Nielsen**, and **Sgt. Nunley** kept him from attending church. Plaintiff has

thus put in question whether these defendants have kept him from a reasonable opportunity to pursue his religion. These defendants therefore must be served and answer this claim.

### B. DUE-PROCESS VIOLATIONS REGARDING ADMINISTRATIVE SEGREGATION AND DISCIPLINARY HEARINGS

Plaintiff asserts he was denied due process when he was (i) kept at length in administrative segregation, and (ii) during disciplinary hearings. (ECF No. 75, at 6.)

### 1. Relevant Facts

Relevant facts from FAC and Court records, taken as true for this Order's purposes:

• SCJ classifies inmates to allow housing and management inmates that provides security, safety, and order. Inmate classification is based on movement restriction, time out of cells, contact with other inmates, number of inmates per cell, property access, recreation time, and other factors of safety, security, order, discipline, and grouping for programs and common activities. Inmate classifications are based on objective criteria, such as age, race, gender, danger, and inmate vulnerability. (ECF No. 75-34, at 5.)

• While at SJC, Plaintiff was put in administrative segregation for about thirty months. (ECF No. 75, at 6.) SJC's stated reason was "in the interest of safety and security of you, other inmates, staff, the citizens of Sanpete County and the Sanpete County Jail itself." (ECF No. 75-11, at 29.)

• Plaintiff placed in administrative segregation, (i) "which is for inmates who have caused or may cause a threat to the safety and security of the [SCJ], whether the threat be to staff, other inmates, or the inmate himself"; (ii) "because he is accused of a high-profile crime and considered a dangerous inmate"; and (iii) "to protect him from other inmates, including inmates that knew, or are related to, [Plaintiff's] alleged victim." (ECF No. 75-34, 5-6.)

• Plaintiff's administrative segregation kept him from participating "in group programs, such as educational classes and chapel." (*Id*. at 6.)

• Lockdown involved "1 hr out every 3 days, no TV, no phone, no cleaning supplies, no canteen or commissary, no visits." (ECF No. 75-15, at 2.)

• Plaintiff "locked . . . down" for ten days. (ECF No. 75-11, at 33.) [No defendant linked.]

• During lockdown, Plaintiff got no outside recreation. (ECF No. 75-13, at 9.)

• Plaintiff kept in "non housing" area for eighteen days. (ECF No. 75-11, at 33.) [No defendant linked.]

• Plaintiff "put in . . . restraints 42 days for rec yard." (*Id.*) [No defendant linked.]

• Plaintiff "missed out rec yard 168 days." (ECF No. 75, at 6.) [No defendant linked.]

• Plaintiff had no access to phone to call family for 85 days. (ECF No. 75, at 7.) [No defendant linked.]

• On April 1, 2017, Plaintiff arrived at SCJ. (ECF No. 75-34, at 13.) Plaintiff "stayed in booking 18 days non housing area, 'receiving area,' shackled for outside rec yard, 'no movement,' no church." (*Id.*) Shackling included "hand cuffs, belly chains, and ankle cuffs," ordered by Defendants Sgt. Nunley and carried out by Defendants D. Christensen and Imlay, until May 12, 2017. (ECF no. 75, at 17.)

• From April 1 to 28, 2017, Plaintiff lacked "cold running water." (ECF No. 75, at 13.) Defendants D. Christensen, Imlay, and Sgt. Nunley all notified but did not get it fixed.[11] (*Id.*)

• On April 18, 2017, without due process, Defendants Bown, Braithwaite, D. Christensen, Nielson, and G. Nunley initiated proceedings to classify Plaintiff "maximum security" and put him in "administrative segregation." (ECF Nos. 75, at 13; 75-34, at 12.) "Plaintiff placed [by

---

[11]Plaintiff has not however alleged complete deprivation of running water for 27 days, just that water was not cold. *See Thomas v. Blackard*, 2 F.4th 716 (7th Cir. 2021) (focusing on "complete deprivation" not temperature of water); *Bailey v. Jeffreys*, No. 21-cv-464-DWD, 2021 U.S. Dist. LEXIS 176669, at *6 (S.D. Ill. Sept. 16, 2021) (denying relief based on running water's temperature when plaintiff did not plead "excessive risk to his health or safety").

Defendants Imlay and Sgt. Nunley] in "G-unit housing 'lockdown.'" (ECF Nos. 75, at 13; 75-34, at 13.)

• On May 20, 2017, Plaintiff involved in assault. (ECF No. 75-3, at 2.)

• On May 22, 2017, Plaintiff locked down for "1st sanction." (ECF No. 75-34, at 13.) [No defendant linked.]

• On May 23, 2017, Plaintiff served notice of charges of "A02 assault or battery, assault with a weapon, assault with a body fluid" and B02 fighting, threats or horseplaying." (ECF No. 75-3, at 2.) [No defendant linked.]

• May 25, 2017, based on video evidence and without allowing Plaintiff to bring witnesses, Plaintiff found guilty by Defendant Neill of disciplinary charges A02 and B02 and assessed "30 days PI for the A-02 charge and 20 days for the B-02 charge," to "be served concurrently." (ECF Nos. 75, at 14; 75-3, at 3; 75-34, at 13.)

• On June 22, 2017, Plaintiff taken off "disciplinary lockdown sanction complete." (ECF No. 75-34, at 13.) Plaintiff placed on "modified lockdown 30 days . . . with 5 hrs out of cell." (*Id*.) [No defendant linked.]

• On July 7, 2017, Plaintiff's "lockdown" changed to "10 hrs out of cell." (*Id*.) [No defendant linked.]

• On July 7, 2017, Defendant Nielsen stated in grievance response, "You are not allowed to go to groups because of your Administrative Segregation status. We cannot allow you to be around other county inmates for your protection as well as the protection of others. The groups that are offered to State inmates are not offered to county inmates."[12] (ECF No. 75-15, at 5.)

---

[12]Grievance denial alone with no connection to "violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). This allegation thus does not state a claim upon which relief may be granted.

• On July 21, 2017, Plaintiff "off lockdown." (*Id*.)

• On October 29 and 31, 2017, Plaintiff disallowed outside after 5PM and "not allowed outside unless deputy" accompanied him. (ECF Nos. 75-13, at 9; 75-34, at 13.) [No defendant linked.]

• During November 2017, Defendants Bown said he does not "have to explain . . . why he took [Plaintiff's] rec yard." (ECF No. 75, at 17.) [Not enough factual detail to establish cause of action.]

• On July 10, 2018, Defendant Braithwaite wrote,

> Going outside to the yard is a privilege and can be taken away at any time, there is plenty of space in the sections to exercise, if you go outside you will be escorted by an officer, not only for the safety and security of the facility, but for your safety also.

(ECF No. 75-10, at 5.) [Not enough factual detail to establish cause of action.]

• On July 10, 2019, Plaintiff involved in assault. (ECF No. 75-11, at 3.)

• On July 11, 2019, Defendant Gates served Plaintiff with "disciplinary form," indicating hearing to be held as to allegations Plaintiff punched another inmate's face (supported by "incident log" and "DVD of incident").[13] (*Id*.) Plaintiff conceded behavior, stating, "The nature of event was more less horseplay or more less a big brother knocking sense into the little brother syndrome." (*Id*. at 4.) Plaintiff "served 72 hours TRO," ending July 15, 2019. (*Id*.)

• On July 15, 2019, disciplinary hearing held on punching incident, refusing Plaintiff's witnesses and request to see video evidence. (*Id*.; ECF No. 75, at 15) Original charge was "Class B-02," but during hearing, "someone scribbled A – assault . . . on the IDHO officers paper," providing insufficient notice of charge. (ECF Nos. 75, at 15; 75-11, at 4.) With no attorney or *Miranda*

---

[13]Plaintiff appears to suggest this assault resulted from prison staff's failure to protect him from the other inmate. However, it is Plaintiff who perpetrated the assault, not the other inmate. Plaintiff describes how the other inmate brought to staff's attention housing "conflicts," before Plaintiff assaulted the other inmate. But Plaintiff has no standing to bring a failure-to-protect claim on behalf of an inmate he attacked.

warning, Plaintiff found guilty of "A-02 Assault," while "B-02 [was] dismissed, then given "30 days lockdown." (ECF Nos. 75, at 15; 75-11, at 6.) [Plaintiff concedes he punched other inmate, thus allowing finding on "some evidence."[14]]

• On July 16, 2019, Plaintiff appeals were rejected by Defendant Braithwaite. (*Id*. at 10, 14.)

• On August 1, 2019, Plaintiff had disciplinary hearing on charge "C-01," amended to "D-03," upon which he was found guilty by Defendant Neill under "some evidence" standard," and given "5 days PI." (ECF No. 75-14, at 2.) [Not enough factual detail to establish cause of action.]

### 2. Legal Standards

Due process demands that a pretrial detainee shall not be punished before lawful conviction. *Bell*, 441 U.S. at 535; *Littlefield v. Deland*, 641 F.2d 729, 731 (10th Cir. 1981). Still, a pretrial detainee may be subjected to carceral conditions and restrictions so long as the conditions and restrictions do not constitute punishment. *Bell*, 441 U.S. at 536-37.

Whether a pretrial-detention condition constitutes punishment depends on whether the condition is applied for punishment purposes or is incidental to some other warranted government objective. *Id*. at 538. If a prison official's action, like putting a detainee in segregation, is carried out with intention to punish, the action equals unconstitutional pretrial punishment. *Id*. Likewise, "if a restriction or condition is not reasonably related to a legitimate [governmental] goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment." *Id.* at 539. However, restraints that "are reasonably related to the institution's interest in maintaining jail security do not, without more,

---

[14]To ensure prisoners' due process rights are met, disciplinary-hearing findings must be "supported by some evidence in the record." *Superintendent v. Hill*, 472 U.S. 445, 454 (1985). The some-evidence standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* at 455. Instead, the inquiry is "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* at 455-56. And, a disciplinary determination may "be upheld even if the evidence supporting the decision is 'meager.'" *Mitchell v. Maynard*, 80 F.3d 1433, 1445 (10th Cir. 1996) (quoting *Hill*, 472 U.S. at 457).

constitute unconstitutional punishment, even if they are discomforting." *Id*. at 540. Plainly, "ensuring security and order at the institution is a permissible nonpunitive objective, whether the facility houses pretrial detainees, convicted inmates, or both." *Id*. at 561. Hence, "no process is required if [a pretrial detainee] is placed in segregation not as punishment but for managerial reasons." *Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002).

### 3. Conclusion

With the following allegations, Plaintiff has successfully stated a claim regarding administrative segregation as punishment and disciplinary proceedings as lacking due process:

(a) On April 1, 2017, Plaintiff arrived at SCJ. (ECF No. 75-34, at 13.) Plaintiff "stayed in booking 18 days non housing area, 'receiving area,' shackled for outside rec yard, 'no movement,' no church." (*Id*.) Shackling included "hand cuffs, belly chains, and ankle cuffs," ordered by Defendants **G. Nunley** and carried out by Defendants **D. Christensen** and **Imlay**, until May 12, 2017. (ECF no. 75, at 17.)

(b) On April 18, 2017, without due process, Defendants **Bown**, **Braithwaite**, **D. Christensen**, **Nielson**, and **G. Nunley** initiated proceedings to classify or classified Plaintiff "maximum security" and put him in "administrative segregation." (ECF Nos. 75, at 13; 75-34, at 12.) "Plaintiff placed [by Defendants **Imlay** and **G. Nunley**] in "G-unit housing 'lockdown.'" (ECF Nos. 75, at 13; 75-34, at 13.)

(c) On May 25, 2017, based on video evidence and without allowing Plaintiff to bring witnesses, Plaintiff found guilty by Defendant **Neill** of disciplinary charges A02 and B02 and assessed "30 days PI for the A-02 charge and 20 days for the B-02 charge," to "be served concurrently." (ECF Nos. 75, at 14; 75-3, at 3; 75-34, at 13.)

Defendants **Bown**, **Braithwaite**, **D. Christensen**, **Imlay**, **Nielson**, and **Sgt. Nunley** must therefore be served and answer the claims applicable to each.

## C. RETALIATION

Plaintiff asserts he endured unconstitutional retaliation. (ECF No. 75, at 7-8.)

### 1. Relevant Facts

Relevant facts from FAC and Court records, taken as true for this Order's purposes:

• In December 2017, Plaintiff "moved out of Section to C-section" as retaliation. (ECF No. 75-34, at 13.) [No defendant linked.]

• On July 25, 2019, Sanpete County Attorney Kevin Daniels charged Plaintiff with one count of Assault by Prisoner, third-degree felony. (ECF No. 75-12, at 2.) "District Attorney offered to drop the case if I drop the law suit." (ECF No. 75, at 7.) [No defendant linked.]

• Plaintiff filed grievance against Defendants Nielsen and G. Nunley for "illegal write up"; in response, Defendants Nielsen and G. Nunley gave Plaintiff "30 days modified lock down, no due process, punishment beyond . . . 30 day sanction." (ECF No. 75-17, at 1.)

### 2. Legal Standards

"It is well-settled that '[p]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right [to free speech].'" *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010) (quoting *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990)). To show retaliation, Plaintiff must prove three elements: (1) Plaintiff was involved in "constitutionally protected activity"; (2) Defendants' behavior injured Plaintiff in a way that "would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) Defendants' injurious behavior was "substantially motivated" as a reaction to Plaintiff's constitutionally protected conduct. *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

### 3. Conclusion

Plaintiff's allegations are that he exercised his First Amendment right to bring a grievance against Defendants Nielsen and G. Nunley and so they got him back by putting him in a thirty-day lockdown, implicitly chilling his motivation to file more grievances. Defendants **Nielsen** and **G. Nunley** must therefore be served to answer these allegations.

### D. "CONVERSION"

Plaintiff asserts his check was used without authorization. (ECF No. 75, at 8.)

### 1. Relevant Facts

Relevant facts from FAC and Court records, taken as true for this Order's purposes:

• Without Plaintiff's permission, Defendants Bennett and Braithwaite applied Plaintiff's "state tax money," check totaling $241.34, to his SCJ debt. (ECF Nos. 75-9, at 3; 75-11, at 32; 75-13, at 4.)

• On April 23, 2018, Defendant Braithwaite wrote, "We can deposit your check in your account without your signature." (ECF No. 75-9, at 2.)

### 2. Legal Standards

"Wrongful conversion is an intentional tort," grounded in state law. *State v. McBride*, 940 P.2d 539, 545 (Utah Ct. App. 1997). Thus, it involves pendent jurisdiction. *See* 28 U.S.C.S. § 1367 (2021). "A conversion is an act of [willful] interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession." *Allred v. Hinkley*, 328 P.2d 726, 727 (Utah 1958).

### 3. Conclusion

Plaintiff's allegations are that Defendants Bennett and Braithwaite took his property (check) without justification and deprived him of its use. Defendants **Bennett** and **Braithwaite** must therefore be served to answer these allegations.

## IV. SERVICE ORDER REGARDING REMAINING DEFENDANTS

The Court concludes that, against some defendants, Plaintiff appears to have stated some claims upon which relief may be granted. Under Federal Rule of Civil Procedure 4(c)(1), the Court therefore requests waiver of service from **Defendants Bennett, Bown, Braithwaite, D. Christensen, Gates, Imlay, Neill, Nielsen, and G. Nunley**.

## V. CONCLUSION

**IT IS ORDERED** that:

**(1)** For failure to state a claim upon which relief may be granted, Defendants **Bailey**, **Brown**, **K. Nunley**, and **Robbins** are **DISMISSED**.

**(2)** For failure to state a claim upon which relief may be granted, all claims are **DISMISSED**, **except** remaining claims of **(a)** violation of right to free exercise of religion, **(b)** violation of due process when requiring administrative segregation and during disciplinary hearing, **(c)** unconstitutional retaliation, and **(d)** state-law claim of conversion.

**(3)** The Clerk of Court shall mail for each remaining defendant--**i.e., Bennett, Bown, Braithwaite, Christensen, Gates, Imlay, Neill, Nielsen,** and **G. Nunley**--Notice of a Lawsuit and Request to Waive Service of a Summons, AO form 398 (for each defendant); 2 copies of Waiver of the Service of Summons, AO form 399 (for each defendant); copy of Fourth Amended Complaint, (ECF No. 75), and this Order to:

**John Young, Jail Commander**
**Mack McDonald, County Administrator**
**c/o Kendall Laws, County Attorney**
**P.O. Box 850**
**Monticello, UT 84535**

**(4)** Defendants are cautioned that Federal Rule of Civil Procedure 4 requires Defendants to cooperate in saving unnecessary costs of service of summons and complaint. Under Rule 4, if Defendants do not waive summons service, after being asked by the Court to do so on Plaintiff's behalf, Defendants must bear service costs unless good cause be shown for not signing and returning the waiver form. If service is waived, this action will proceed as if Defendants had been served on the day the waiver is filed, except that Defendants need not file an answer until **60 days** from the date when the waiver request was sent. *See* Fed. R. Civ. P. 4(d)(3). (This allows more days to respond than would be required if formal summons service is necessary.) Defendants must read the statement at the waiver form's end that more completely describes the party's duties about waiver. If service is waived after the deadline given in the Notice of a Lawsuit and Request to Waive Service of a Summons but before Defendants have been personally served, the Answer shall be due **60 days** from the date on which the request for waiver was sent or **20 days** from the date the waiver form is filed, whichever is later.

**(5)**  If Defendants do not execute waivers, attorneys for Defendants must file notices listing reasons waivers have not been given. Reports are due **30 days** from the date Requests were sent.

**(6)** Defendants shall answer the complaint, observing Federal Rules of Civil Procedure and the following litigation schedule:

    **(a)** If Defendants assert the affirmative defense of Plaintiff's failure to exhaust administrative remedies in a grievance process, Defendants must,

**(i)** within **60 days** of date of waiver request, file an answer;

**(ii)** within **90 days** of filing an answer, prepare and file a *Martinez* report[15] limited to the exhaustion issue; and,

**(iii)** within **120 days** of filing an answer, file a separate summary judgment motion, with supporting memorandum.

**(b)** If Defendants challenge the complaint's bare allegations, Defendants shall, within **60 days** of date of waiver request, file a motion to dismiss based on Federal Rule of Civil Procedure 12(b)(6).

**(c)** If Defendants choose not to rely on an exhaustion defense and want to pierce the complaint's allegations, Defendants must,

**(i)** within **60 days** of date of waiver request, file an answer;

**(ii)** within **90 days** of filing an answer, prepare and file a *Martinez* report addressing the complaint's substance; and,

**(iii)** within **120 days** of filing an answer, file a separate summary judgment motion, with supporting memorandum.

---

[15]*See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (approving district court's practice of ordering prison administration to prepare report to be included in pleadings in cases when prisoner has filed suit alleging constitutional violation against institution officials).

In *Gee v. Estes*, 829 F.2d 1005 (10th Cir. 1987)*,* the Tenth Circuit explained the nature and function of a *Martinez* report, saying:

> Under the *Martinez* procedure, the district judge or a United States magistrate [judge] to whom the matter has been referred will direct prison officials to respond in writing to the various allegations, supporting their response by affidavits and copies of internal disciplinary rules and reports. The purpose of the *Martinez* report is to ascertain whether there is a factual as well as a legal basis for the prisoner's claims. This, of course, will allow the court to dig beneath the conclusional allegations. These reports have proved useful to determine whether the case is so devoid of merit as to warrant dismissal without trial.

*Id.* at 1007.

**(d)** If Defendants want to seek relief otherwise contemplated under procedural rules, Defendants must file an appropriate motion within **90 days** of filing an answer.

**(7)** Plaintiff must, within **30 days** of its filing, respond to *Martinez* report.

**(8)** Plaintiff must, within **30 days** of its filing, respond to motion to dismiss or summary-judgment motion. For Plaintiff's information and convenience, the Court has attached the procedural rules governing summary-judgment practice.

**(9)** Defendants shall file a reply brief within **14 days** after the date Plaintiff's opposition is filed.

**(10)** A motion to dismiss or for summary judgment shall be deemed submitted as of the date the reply brief is due. No hearing will be held on a motion unless the Court so orders at a later date.

**(11)** Plaintiff must tell the Court of any address change and timely comply with Court orders. *See* D. Utah Civ. R. 83-1.3(e) ("In all cases, counsel and parties appearing *pro se* must notify the clerk's office immediately of any change in address, email address, or telephone number."). Failure to do so may result in this action's dismissal for failure to prosecute. *See* Fed. R. Civ. P. 41(b) ("If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule--except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19--operates as an adjudication on the merits.").

**(12)**  Time extensions are disfavored, though reasonable extensions may be granted. Any motion for time extension must be filed no later than **14 days** before the deadline to be extended.

**(13)** No direct communication is to take place with any judge. All relevant information, letters, documents, and papers, labeled with case number, are to be directed to the Clerk of Court.

DATED this 1st day of October, 2021.

BY THE COURT:

_____
JUDGE CLARK WADDOUPS
United States District Court

# Fed Rule of Civil Procedure 56

## Rule 56. Summary Judgment

- **(a) Motion for Summary Judgment or Partial Summary Judgment.** A party may move for summary judgment, identifying each claim or defense - or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.
- **(b) Time to File a Motion.** Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery.
- **(c) Procedures.**
  - **(1)** *Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
    - **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
    - **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
  - **(2)** *Objection That a Fact Is Not Supported by Admissible Evidence.* A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
  - **(3)** *Materials Not Cited.* The court need consider only the cited materials, but it may consider other materials in the record.
  - **(4)** *Affidavits or Declarations.* An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.
- **(d) When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
  - **(1)** defer considering the motion or deny it;
  - **(2)** allow time to obtain affidavits or declarations or to take discovery; or
  - **(3)** issue any other appropriate order.
- **(e) Failing to Properly Support or Address a Fact.** If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
  - **(1)** give an opportunity to properly support or address the fact;
  - **(2)** consider the fact undisputed for purposes of the motion;
  - **(3)** grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or
  - **(4)** issue any other appropriate order.
- **(f) Judgment Independent of the Motion.** After giving notice and a reasonable time to respond, the court may:
  - **(1)** grant summary judgment for a nonmovant;
  - **(2)** grant the motion on grounds not raised by a party; or
  - **(3)** consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.
- **(g) Failing to Grant All the Requested Relief.** If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case.
- **(h) Affidavit or Declaration Submitted in Bad Faith.** If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court—after notice and a reasonable time to respond—may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

DISTRICT OF UTAH LOCAL CIVIL RULE 56-1

*SUMMARY JUDGMENT: MOTIONS AND SUPPORTING MEMORANDA*

**(a) Summary Judgment Motions and Memoranda.**
A motion for summary judgment and the supporting memorandum must clearly identify itself in the case caption and introduction.

**(b) Motion; Requirements and Supporting Evidence.**
A motion for summary judgment must include the following sections and be supported by an Appendix of Evidence as follows:

(1) Introduction and Relief Sought:A concise statement of each claim or defense for which summary judgment is sought, along with a clear statement of the relief requested. The parties should endeavor to address all summary judgment issues in a single motion. If a party files more than one motion, the court may strike the motion and that require the motions be consolidated into a single motion.

(2) Background (Optional):Parties may opt to include this section to provide background and context for the case, dispute, and motion. If included, this section should be placed between the Relief Sought section and the Statement of Undisputed Material Facts section. Factual summaries in the background section need not be limited to undisputed facts and need not cite to evidentiary support.

(3) Statement of Undisputed Material Facts: A concise statement of the undisputed material facts that entitle the moving party to judgment as a matter of law. Only those facts necessary to decide the motion should be included in this section. The moving party must cite with particularity the evidence in the Appendix of Evidence that supports each factual assertion.

(4) Argument: An explanation for each claim or defense, of why, under the applicable legal principles, the moving party is entitled to judgment as a matter of law. The arguments should include a statement of each claim or defense on which the party is seeking summary judgment and supporting authorities. Any factual citations must cite to the Appendix of Evidence, not the Statement of Undisputed Material Facts.

(5) Appendix of Evidence: All evidence offered in support of the motion must be submitted in an attached appendix. The appendix should be proceded by a captioned cover-page index that lists each exhibit by number, includes a description or title, and if the exhibit is a document, identifies the source of the document. The appendix should include complete copies of all exhibits, including complete copies of depositions, to the extent possible. In cases where lengthy depositions are relied upon, the moving party need not submit the entire deposition. However, the moving party must submit at least four (4) pages before and four (4) pages after the cited depostition transcript pages(s), for a total of at least nine (9).

**(c) Opposition Memorandum Requirements and Supporting Evidence.**
A memorandum in opposition to a motion for summary judgment must include the following sections and, if applicable, be supported by an Appendix of Evidence as follows:

(1) Introduction: A concise summary explaining why summary judgment should be denied.

(2) Background (Optional): Parties may opt to include this section to provide background and context for the case, dispute, and motion. If included, this section should be placed between the Introduction section and the Response to Statement of Undisputed Material Facts section. Factual summaries in the background
section need not be limited to undisputed facts and need not cite to evidentiary support.

(3) Response to Statement of Undisputed Material Facts: A restatement of each fact the opposing party contends is genuinely disputed or immaterial, a concise statement explaining why the fact is disputed or immaterial, and a citation with particularity to the evidence upon which the non-moving party relies to refute that fact **8**. Any factual citations must reference the appropriate party's Appendix of Evidence, rather than either party's factual statements or

responses. The nonmoving party should not restate all of the moving party's statement of facts and should only respond to those facts for which there is a genuine dispute of material fact.

(4) Statement of Additional Material Facts (if applicable): If additional material facts are relevant to show that there is a genuine dispute of material fact, state each such fact and cite with particularity the evidence that supports the factual assertion from the appropriate party's Appendix of Evidence.

(5) Argument: An explanation for each claim or defense of why, under the applicable legal principles, summary judgment should be denied. Any factual citations must cite to the appropriate party's Appendix of Evidence, rather than either party's factual statements or responses.

(6) Appendix of Evidence: All evidence offered in opposition to the motion must be submitted in an appendix, utilizing the same procedure set out in DUCivR 56-1(b)(5). Counsel must make every effort not to duplicate evidence submitted by the other party. The appendix should be preceded by a cover page index that lists each exhibit by number, includes a description or title and, if the exhibit is a document, identifies the source of the document.

**(d) Reply**.

The moving party may file a reply memorandum. In the reply, a moving party may cite only additional evidence not previously cited in the opening memorandum to rebut a claim that a material fact is in dispute. Otherwise, no additional evidence may be cited in the reply memorandum, and if cited, the court will disregard it.

**(e) Citations of Supplemental Authority.**

When pertinent and significant citations come to the attention of a party after the party's memorandum in support of or in opposition to a summary judgment motion has been filed, or after oral argument but before decision, a party may promptly file a notice with the court and serve a copy on all counsel, setting forth the citations. There must be a reference either to the page of the memorandum or to a point argued orally to which the citations pertain, but the notice must state, without argument, the reasons for the supplemental citations. Any response must be made, filed promptly, and be similarly limited.

**(f) Failure to Respond.**

Failure to respond timely to a motion for summary judgment may result in the court's granting the motion without further notice, provided the moving party has established that it is entitled to judgment as a matter of law.

**(g) Length of Memoranda and Filing Times.**

(1) A motion for summary judgment and a memorandum in opposition must not exceed 10,000 words, or in the alternative, forty (40) pages. A reply brief cannot exceed 5,000 words, or in the alternative, twenty (20) pages. If the document exceeds the page limit, then the party must certify compliance with the word-count limit. This limitation includes the following items: introduction, relief sought, background, statement of undisputed material facts, response to statement of undisputed material facts, statement of additional material facts, argument, and conclusion. This limitation excludes the following items: face sheet, table of contents, table of authorities, signature block, certificate of service, and appendix. Motions to file an overlength brief are discouraged and will be granted only upon a showing of good cause and exceptional circumstances, as set forth in DUCivR 7-1(e). Â

(2) Filing times and length of memoranda are governed by DUCivR 7-1.