THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| ANTHONY JEFFREY CHRISTENSEN,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT BRAITHWAITE et al.,<br><br>Defendants. | MEMORANDUM DECISION & ORDER REGARDING RULE 56(d) AFFIDAVIT<br><br>Case No. 2:17-CV-1123-TS<br><br>District Judge Ted Stewart |

Plaintiff's Fourth Amended Complaint (FAC) remains at issue. (ECF No. 75.) After an order dismissing some defendants and claims, the following defendants and claims endure: (a) Sanpete County employees Bennett, Bown, Braithwaite, Christensen, Gates, Imlay, Neill, Nielson, and G. Nunley; and (b) violations of federal constitutional rights of free exercise of religion, due process, and free speech, and the state-law tort of conversion. (ECF No. 85, at 24.)

## PROCEDURAL BACKGROUND

As ordered by the Court, Defendants filed a *Martinez* report, to which they attached declarations and jail policies and records, (ECF Nos. 85, 97), in support of a summary-judgment motion, to which they attached a declaration, jail records and policies, and a state-court docket, (ECF Nos. 104, 104-1). Defendants moved for summary judgment based on qualified immunity and Plaintiff's alleged failure to exhaust administrative remedies. (*Id.*)

Once Plaintiff filed his *pro se* response to the summary-judgment motion, it was clear that he sought "to expand the remaining claims and time durations involved in [his] claims" and was otherwise hampered from adequately responding. (ECF Nos. 105; 108, at 2.) The Court thus

struck his response and Defendants' reply to the response, (ECF No. 105-06, 108), and granted Plaintiff's motion for counsel for the limited purpose of responding to the pending summary-judgment motion, (ECF No. 108, at 3). The Court stated, "The response should thoroughly set forth and analyze arguments addressing Defendants' affirmative defenses of Plaintiff's alleged failure to exhaust his administrative remedies, and qualified immunity." (*Id.*) The Court gave appointed counsel fourteen days from appointment in which to enter his limited appearance and ninety days from entry of appearance in which to file the summary-judgment response. (*Id.*) Appearance was entered March 23, 2023. (ECF No. 110.) Two stipulated extensions later, Plaintiff's counsel filed "Rule 56(d) Affidavit of Andrew M. Morse," in which counsel set forth reasons why further "[d]iscovery is needed." (ECF Nos. 115; 117, at 5; 119.) Defendants responded. (ECF No. 121.)

### RULE 56(d)

Rule 56(d) states:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).

A party filing an affidavit asking for more discovery time under Rule 56(d) "invokes the court's discretion." *Jensen v. Redevelopment Agency*, 998 F.2d 1550, 1553-54 (10th Cir. 1993). "Unless dilatory or lacking in merit," a 56(d) affidavit "should be liberally treated." *Id.* at 1554 (cleaned up). Rule 56's underlying principle is "that summary judgment should be refused where

the nonmoving party has not had the opportunity to discover information that is essential to opposition." *Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000). The rule does not mean, though, that summary judgment may not be entered until the end of discovery. *Id.* at 784.

A proper Rule 56(d) affidavit sets forth: "(1) the probable facts not available, (2) why those facts cannot be presented currently, (3) what steps have been taken to obtain these facts, and (4) how additional time will enable the party to obtain those facts and rebut the motion for summary judgment." *Adams v. C3 Pipeline Constr. Inc.*, 30 F.4th 943, 968 (10th Cir. 2021) (cleaned up). Meanwhile, "[t]he movant's exclusive control of [relevant] information is a factor weighing heavily in favor of relief under Rule [56(d)]." *Price*, 232 F.3d at 783.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

To analyze whether court action is warranted under 56(d)--because it is a threshold and potentially dispositive issue--the Court focuses on Defendants' affirmative defense of Plaintiff's alleged failure to exhaust his administrative remedies in the jail grievance system. (ECF No. 104, at 24-25.)

When passing the Prison Litigation Reform Act of 1995 (PLRA), Congress "impos[ed] a strict administrative-exhaustion requirement . . . [on] civil-rights claims filed by prisoners." *Pakdel v. City and Cnty. of San Francisco*, 141 S. Ct. 2226, 2231 (2021) (per curiam) (citing 42 U.S.C.S. § 1997e(a) (2023)). That section states, "No action shall be brought with respect to prison conditions under [42 U.S.C.S. § 1983 (2023)], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.S. § 1997e(a) (2023). The Supreme Court has often

emphasized, "[T]hat language is 'mandatory.'" *Ross v. Blake*, 578 U.S. 632, 638 (2016) ("An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies.") (citing *Woodford v. Ngo*, 548 U.S. 81, 85 (2006) ("Exhaustion is no longer left to the discretion of the district court.")); *Gray v. Sorrels*, 818 F. App'x 787, 791 (10th Cir. 2020) (unpublished) ("[T]he district court is not authorized to dispense with [the statutory exhaustion requirement]."). "There is no question that . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("All agree that no unexhausted claim may be considered."). Indeed, PLRA "requires compliance with 'deadlines and other critical procedural rules,' *Woodford*, 548 U.S. at 90-91, with no exceptions for 'special circumstances.'" *Ramirez v. Collier*, 142 S. Ct. 1264, 1275 (2022); *see Ross*, 578 U.S. at 639 ("PLRA's text suggests no limits on an inmate's obligation to exhaust--irrespective of any 'special circumstances.'"); *Miller v. French*, 530 U.S. 327, 337 (2000) ("The mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion."); *see also McNeil v. United States*, 508 U.S. 106, 111 (1993) (stating "we are not free to rewrite the statutory text" when Congress has strictly barred "claimants from bringing suit in federal court until they have exhausted their administrative remedies").

      The Supreme Court has held that the PLRA requires "proper exhaustion." *Woodford*, 548 U.S. at 90. "Proper exhaustion" intends use of "'all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Id*. (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Indeed, the "rules are defined not by PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218; *see also Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) ("Because the prison's procedural

requirements define the steps necessary for exhaustion, an inmate may only exhaust by properly following all of the steps laid out in the prison system's grievance procedure." (Citation omitted.)). The Supreme Court concedes this requirement will stymie some prisoner cases, but observes that a "centerpiece of the PLRA's effort 'to reduce the quantity . . . of prisoner suits' is an "invigorated" exhaustion provision, § 1997e(a).'" *Woodford*, 548 U.S. at 84, 103 (quoting *Porter v. Nussle*, 534 U.S. 516, 524 (2002)); *see also id.* at 103 (responding to argument "that requiring proper exhaustion is harsh for prisoners, who generally are untrained in the law and are often poorly educated," Supreme Court notes "that prisoners who litigate in federal court generally proceed *pro se* and are forced to comply with numerous unforgiving deadlines and other procedural requirements").

When defendants move for summary judgment grounded on an affirmative defense, like exhaustion of grievances, defendants are burdened with showing a lack of any disputed facts concerning the affirmative defense raised. *See Helm v. Kansas*, 656 F.3d 1277, 1284 (10th Cir. 2011). If that lack of disputed facts is shown by defendants, the burden then shifts to the plaintiff to "demonstrate with specificity the existence of a disputed fact" regarding the affirmative defense at issue. *See Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997).

Defendants' summary-judgment motion argues a lack of disputed facts regarding Plaintiff's alleged failure to exhaust his administrative remedies in the jail grievance process. (ECF No. 104, at 24-25.) The burden has thus shifted to Plaintiff to show disputed facts exist as to his alleged failure to fully and properly grieve the remaining claims at issue here. *See Hutchinson*, 105 F.3d at 564.

This is where Plaintiff's efforts should be directed for now--both as to discovery and the summary-judgment response. Any further attention to Defendants' qualified-immunity defense is stayed pending disposition of the failure-to-exhaust defense. The Court therefore reviews Plaintiff's 56(d) affidavit solely for its relevance to the failure-to-exhaust defense.

## 56(d) AFFIDAVIT VIS À VIS EXHAUSTION

The 56(d) affidavit attaches Plaintiff's declaration averring that the jail's grievance process was fraught with failures of jail personnel to keep accurate records and timely respond to Plaintiff's grievances. This supports Plaintiff's argument that the evidence supplied by Defendants' *Martinez* report and summary-judgment-motion attachments leaves "probable facts not available" to Plaintiff. *Adams*, 30 F.4th at 968. As to "why those facts cannot be presented currently," *id.*, it is clear that defendant-movants have "exclusive control" of certain grievance records, *Price*, 232 F.3d at 783. The affidavit is unclear as to what steps Plaintiff may have taken (if any) to obtain further germane grievance records from Defendants that would help Plaintiff assess whether he can carry his administrative-exhaustion burden. But it is true that, acting *pro se*, Plaintiff already unsuccessfully tried to respond to the summary-judgment motion. And new counsel stepped into a situation in which Defendants had already done discovery via their *Martinez* report and filed a summary-judgment motion, while only limited discovery was done by the plaintiff acting *pro se*. It makes sense to give new counsel an opening to do some discovery, especially now that--for the immediate future of the the litigation--the spotlight will rest solely on the exhaustion issue. Plaintiff also does not state in the Rule 56(d) affidavit how long he anticipates discovery will take; of course, he drafted the affidavit to address a much wider of swath of discovery than will be needed to address only the exhaustion matter. He

simply requests "a continuance on the . . . Motion for Summary Judgment until such time that discovery is either complete or sufficiently completed that the Plaintiff can fully address and respond to the Sanpete County Defendants' Motion for Summary Judgment." (ECF No. 117, at 19.) This request is too open-ended, so must be reined in.

On the other hand, Defendants' response to the Rule 56(d) affidavit mostly attacks Plaintiff's stated needs for discovery, noting "Plaintiff's delay and dilatory practices"; Plaintiff's "personal knowledge . . . of facts," which Defendants seem to argue should be sufficient discovery; and how discovery is unnecessary (a) to each claim's merits and (b) in light of the qualified-immunity defense. (ECF No. 121.) This all ignores (i) the fact that Plaintiff acted *pro se* for the first five-and-a-half years of this case and so possibly did not have the resources and savvy to pursue the case and discovery at a faster clip; (ii) Plaintiff's personal knowledge of the grievance process (displayed in his declaration) indicating a possibility that more discovery into Defendants' grievance records and policies may be fruitful; and (iii) the need for discovery for the exhaustion defense, which has nothing to do with merits or qualified immunity.

## ORDER

**IT IS THEREFORE ORDERED** as follows:

**(1)** Under Rule 56(d)--**as to only the issue of exhaustion of administrative remedies**[1]-- the Court grants Plaintiff 120 days from this Order's date in which to "obtain affidavits or

---

[1] Each claim and discrete set of allegations should be addressed separately as to whether it was properly exhausted:
    (1) Under the Free Exercise Clause, the allegations that "[a]round April 30, 2017, Defendants Braithwaite, Bown, Christensen, Imlay, Nielsen, and Sgt. Nunley kept Plaintiff from attending church services for "safety" and "security reasons." (ECF Nos. 75, at 10; 75-34, at 13.)" (ECF No. 85, at 14.)
    (2) Under the Due Process Clause, Plaintiff's allegations regarding administrative-segregation-as-punishment, and disciplinary proceedings:
        (a) On April 1, 2017, Plaintiff arrived at SCJ. (ECF No. 75-34, at 13.) Plaintiff "stayed in booking 18 days non housing area, 'receiving area,' shackled for

declarations or to take discovery," Fed. R, Civ. P. 56(d), and file a response to Defendants' summary-judgment motion. (ECF Nos. 104, 117.)

**(2)** Defendants will then have thirty days in which to reply to Plaintiff's summary-judgment response.

**(3)** Defendants' qualified-immunity defense is **STAYED** while the issue of exhaustion of administrative remedies is litigated to its conclusion.

DATED this 5th day of March, 2024.

BY THE COURT:

_____
JUDGE TED STEWART
United States District Court

---

outside rec yard, 'no movement,' no church." (*Id.*) Shackling included "hand cuffs, belly chains, and ankle cuffs," ordered by Defendants G. Nunley and carried out by Defendants D. Christensen and Imlay, until May 12, 2017. (ECF no. 75, at 17.) (b) On April 18, 2017, without due process, Defendants Bown, Braithwaite, D. Christensen, Nielson, and G. Nunley initiated proceedings to classify or classified Plaintiff "maximum security" and put him in "administrative segregation." (ECF Nos. 75, at 13; 75-34, at 12.) "Plaintiff placed [by Defendants Imlay and G. Nunley] in "G-unit housing 'lockdown.'" (ECF Nos. 75, at 13; 75-34, at 13.) (c) On May 25, 2017, based on video evidence and without allowing Plaintiff to bring witnesses, Plaintiff found guilty by Defendant Neill of disciplinary charges A02 and B02 and assessed "30 days PI for the A-02 charge and 20 days for the B-02 charge," to "be served concurrently." (ECF Nos. 75, at 14; 75-3, at 3; 75-34, at 13.)

(ECF No. 85, at 21.)

(3) Under the Free Speech Clause, allegations that "Defendants Nielsen and G. Nunley . . . got him back [for filing grievances] by putting him in a thirty-day lockdown, implicitly chilling his motivation to file more grievances." (*Id.* at 23.)

(4) Under the state-law tort of conversion, Plaintiff's allegations that his "'state tax money'" check was "used without authorization." (*Id.* at 23-24 (cleaned up).)